CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 17, 2026

LAURA A. AUSTIN, CLERK
BY:
            s/A. Beeson
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID PAUL O'QUINN, | ) | |
| Petitioner, | ) | Civil Action No. 7:24-cv-00810 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| CHADWICK DOTSON, | ) | Chief United States District Judge |
| Respondent. | ) | |

**MEMORANDUM OPINION**

The petitioner, David Paul O'Quinn, filed this 28 U.S.C. § 2254 action on November 15, 2024.[1] (Dkt. No. 1). O'Quinn's petition challenges his conviction and ten-year sentence in the Circuit Court for the County of Dickenson for indecent liberties with a minor. Case No. CR1823001 (Dickenson Cir. Ct.).

O'Quinn brings seven claims, one of which he raises for the first time in a motion for summary judgment separate from his petition. (Dkt. Nos. 1, 21). The respondent has filed a motion to dismiss. (Dkt. No. 14). O'Quinn responded (Dkt. No. 22) and filed his motion for summary judgment. (Dkt. No. 21). O'Quinn has also filed additional exhibits that the court has reviewed. (Dkt. Nos. 2, 11). The court finds that O'Quinn's claims are time-barred, procedurally defaulted, and/or not properly before the court. Accordingly, respondent's motion will be granted, O'Quinn's motion will be denied, and the court will issue an order dismissing this action.

## I.     BACKGROUND

### A.    State Court Proceedings

O'Quinn was convicted after a jury trial and sentenced to a ten-year term of

---

[1] This is the date that O'Quinn claims to have placed his petition in the prison mailing system. (Dkt. No. 1 at 15). "Inmates are generally provided the benefit of the mailbox rule, which considers prisoner court filings to be 'filed' as of the date that the documents are given to prison authorities for mailing." *Johnson v. Dotson*, No. 23-6186, 2024 WL 3825215, at *2 (4th Cir. Aug. 15, 2024) (per curiam).

imprisonment, none of which was suspended. (Resp't's Ex. 1). O'Quinn appealed to the Court of Appeals of Virginia which affirmed O'Quinn's conviction in an unpublished opinion. (Resp't's Ex. 5). He then filed a demand for consideration by a three-judge panel which the Court of Appeals of Virginia denied. (Resp't's Exs. 6, 7). His petition for appeal in the Supreme Court of Virginia was refused on August 30, 2021. (Resp't's Exs. 8, 9, 10). O'Quinn did not file a petition for writ of certiorari in the United States Supreme Court.

On July 3, 2022, O'Quinn filed a handwritten "Petition for Habeas Corpus under 28 U.S.C. sec. 2254" in the Supreme Court of Virginia. (Resp't's Ex. 11 at 2-9). In a letter to O'Quinn dated July 12, 2022, the Supreme Court of Virginia acknowledged receipt of this document but noted that it was not being filed because it did not substantially comply with the format for habeas petitions required by Virginia Code § 8.01-655. (*Id.* at 10).

On July 29, 2022, O'Quinn filed a proper petition for writ of habeas corpus in the Supreme Court of Virginia. (*Id.* at 11-33). O'Quinn alleged the following[2]:

(1) The trial court erred in denying O'Quinn's motion to strike the Commonwealth's evidence and to dismiss the case because the evidence was insufficient.

(2) O'Quinn was not allowed to tell the jury that certain witnesses (i.e., D.J. Woods and Angela Boyd) broke into his home six days before he was charged with the crime at hand. Such witnesses' testimony was "payback and revenge" for O'Quinn "calling the law" on D.J. Woods and Angela Boyd for breaking into his house a week earlier "(they lied on [O'Quinn])."

(3) O'Quinn was charged with the incorrect charge. There was no exposure on O'Quinn's part at all. Nor should O'Quinn have been charged with lascivious intent at all. There was no violation of Virginia Code § 18.1-214 of 1950 at all.

(4) There was no evidence against O'Quinn at all. The alleged victim testified that O'Quinn "did nothing at all" and admitted "on the stand that [O'Quinn] did no wrong and that [the victim], in fact, did lift the covers up his self while [O'Quinn] was

---

[2] The court largely restates the claims as O'Quinn wrote them but has slightly edited them for clarity.

2

asleep."

(5) Police records show that O'Quinn had D.J. Woods and Angela Boyd arrested only one week earlier.   Then six days later O'Quinn was arrested "over a lie that D.J. Woods told his son to lie on [O'Quinn]."   Also, the victim "told his grandmother that he wasn't going to testify on O'Quinn anymore" and that the victim "is well known for lying on people, his dad D.J. Woods admitted this."

(6) "It was also stated that" the victim "got mad at his dad[,] D.J. Woods[,] then told his grandmother that his dad [,]D.J. Woods[,] made him lie on [O'Quinn]."   This was "told" at a church that the victim's grandmother "goes to service at every Sunday."

(*Id.* at 14-16).   The Supreme Court of Virginia denied this petition without an evidentiary hearing on October 6, 2022.   (*Id.* at 34).   In so doing, the Supreme Court of Virginia determined that the "claims are barred because a petition for writ of habeas corpus may not be employed as a substitute for an appeal."   (*Id.* (citing *Brooks v. Peyton*, 210 Va. 318, 321-22 (1969)).   He then filed a petition to set aside the dismissal of his habeas petition that was denied by the Supreme Court of Virginia on November 23, 2022.   (*Id.* at 35-42).   He did not seek review of the denial of his state habeas petition in the United States Supreme Court.

**B.   O'Quinn's Claims**

O'Quinn raises the following claims now in federal court[3]:

(1) The Commonwealth's Attorney did not reveal that it's [sic] witnesses Don Woods, Jr. and Angela Boyd, both confidential informants for the Dickenson County [Police Department], received plea bargains in the case against them for breaking and entering and felony theft of prescription narcotics from Mr. O'Quinn in exchange for their testimony against Mr. O'Quinn in the case he was arrested for six days later.

(2) As the victim testified that the defendant was asleep during the time the crime allegedly took place, the charge should have been dismissed.   This is one of several due process errors.

(3) The victim testified that the defendant was asleep when he, the

---

[3] The court again largely restates the claims as O'Quinn wrote them but has slightly edited them for clarity.

victim, lifted and looked under the covers and testified [that] the defendant did not speak to the victim as he, the defendant, was asleep during the time this alleged crime took place.

(4) The witness testimony is contrary to the charge in the indictment. The defendant was charged with taking indecent liberties. The victim['s] testimony says the defendant was asleep and the victim looked under the covers and that the defendant said nothing to the victim.

(5) The defendant was not allowed to testify that the victim['s] father had broken into the defendant['s] home six days prior to the defendant being charged and arrested for the crimes in this case.

(6) The indictment cited "indecent liberties[,]" yet the victim testified that the defendant was asleep when the victim lifted the covers and exposed the defendant.

(Habeas Pet. 6-17, Dkt. No. 1). In his motion for summary judgment, O'Quinn raises for the first time the following claim:

(7) The convicting jury "was savagely tainted by Tammy Haggins, the aunt of Amber Smith who was part of a case over 20 years ago" against O'Quinn. Haggins "should have never been anywhere close to [the] jury pool and selection," but was "around all the jury members long enough to tell them about [O'Quinn's] past with her niece[,] Amber Smith."

(Mot. for Summary Judgment 1-2, Dkt. No. 21).

## C.    Findings of Fact by the Court of Appeals of Virginia[4]

Gary Don Woods, Jr., the victim's father, was friends with O'Quinn. O'Quinn advised Woods that he had been in trouble for "drying a kid off with a towel." Woods gave O'Quinn "the benefit of the doubt over a towel" and allowed O'Quinn to be around the victim. On one occasion in July 2018, Woods and the victim, who was twelve years old at the time, spent the night at O'Quinn's house. The victim fell asleep on the couch in the living room. Woods and

---

[4] These factual findings were made by the Court of Appeals of Virginia when it affirmed O'Quinn's conviction. (Resp't's Ex. 5 at 2-3). These facts are entitled to deference in federal court. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). These factual findings have been slightly edited from the original to avoid any bracketing of text.

4

O'Quinn played video games all night, until Woods had to go to work the next morning.  Woods asked O'Quinn if the victim could stay with him until Woods returned from work later that afternoon.  O'Quinn agreed that the victim could stay, saying they would "ride four-wheelers, play video games and shoot guns."

After Woods left for work, O'Quinn told the victim that "it would be better" if the victim slept in O'Quinn's bed, as opposed to the couch, because if O'Quinn's probation officer came to the house, then the victim could hide under the bed.  O'Quinn suggested that the victim sleep in his underwear, but the victim refused.  O'Quinn, wearing only boxer underwear, got into the bed with the victim. They were the only people in the house.  The victim and O'Quinn fell asleep; when the victim awakened, he "looked under the cover" and saw that O'Quinn's boxers "were pulled down to his knees," exposing his penis.  The victim did not know what an erection was and did not remember whether O'Quinn had an erection at the time. O'Quinn awoke, pulled up his underwear, and said, "I'm sorry.  My underwear always comes down because I scratch too hard." Afterwards, the victim repeatedly asked to call his grandmother, but O'Quinn would not allow him to use the phone.

When Woods picked up the victim in the afternoon, Woods was not aware of any issues or problems.  The victim later confided to Woods what had happened and that he had seen O'Quinn's penis. Woods immediately confronted O'Quinn, who admitted that he and the victim slept in the same bed.  O'Quinn told Woods that he scratched in his sleep and that his underwear fell to his knees, exposing his penis.  After the incident, Woods did not allow the victim to be alone with O'Quinn, and Woods stopped socializing with O'Quinn.

(Resp't's Ex. 5 at 2-3).

## D.    Respondent's Motion to Dismiss

Respondent argues that the claims O'Quinn raises in his petition are time-barred and procedurally defaulted.  (Br. in Supp. of Mot. to Dismiss 6-14, Dkt. No. 16).  Respondent did not file a response to O'Quinn's motion for summary judgment addressing the claim that he raised for the first time in that motion.

## E.    O'Quinn's Response and Motion

In his response to the motion to dismiss, O'Quinn generally restates the claims and

arguments he made on direct appeal.  (Dkt. No. 22).  O'Quinn similarly restates these claims and arguments in his motion for summary judgment but includes his new claim regarding the alleged tainting of the jury pool.  (Mot. for Summary Judgment, Dkt. No. 21).

## II.    ANALYSIS

### A.    Statute of Limitations

Respondent first argues that O'Quinn's claims are time-barred.  (Br. in Supp. of Mot. to Dismiss 6-7, Dkt. No. 16).  The Antiterrorism and Effective Death Penalty Act of 1996 provides a one-year statute of limitations for § 2254 petitions by a person in custody pursuant to a state court judgment.  28 U.S.C. § 2244(d)(1).  The one-year limitations period begins to run from the latest of four possible dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Section § 2244(d)(2) provides that periods of time during which a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under" § 2244(d)(1).

Here, the only potentially relevant provisions of § 2244(d)(1) are subsections (A) and (D).

6

Regarding subsection (A), the one-year limitations period began to run on November 29, 2021, which is 90 days after the Supreme Court of Virginia denied O'Quinn's petition for appeal.[5]  *See* Rules of the Supreme Court of the United States, Rule 13 (time to file petition for writ of certiorari expires 90 days after entry of final judgment by highest state court); *Pifer v. West Virginia*, Civil Action No. 2:16-04905, 2018 WL 1702683, at *4 (S.D.W. Va. Mar. 7, 2018), *proposed findings and recommendation adopted by* 2018 WL 1701977 (S.D. W. Va. Apr. 5, 2018)  ("If the Petitioner does not petition for a Writ of Certiorari in the United States Supreme Court upon the denial of direct review in the highest State Court, then the one-year limitation period begins to run 90 days after judgment is entered in the highest State Court (i.e., when the period for filing a petition for a Writ of Certiorari in the United States Supreme Court expires).") (citing *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000)).  Although the pendency of a properly-filed state habeas petition tolls the one-year limitations period, 28 U.S.C. § 2244(d)(2), O'Quinn waited until July 29, 2022— or eight months later—to properly file his petition in the Supreme Court of Virginia.[6]  And O'Quinn waited until November 15, 2024, to file the instant petition.  This date fell approximately two years after the Supreme Court of Virginia denied O'Quinn's petition to set aside the dismissal of his state habeas petition on November 23, 2022.  Thus, under an application of § 2244(d)(1)(A), O'Quinn's claims are untimely by approximately two years and eight months.[7]

---

[5]  Because the 90-day period expired on November 28, 2021, which fell on a Sunday, O'Quinn's deadline to file a petition for writ of certiorari extended to the following day.  *See* Rules of the Supreme Court of the United States, Rule 30.

[6] As noted above, on July 3, 2022, O'Quinn filed in the Supreme Court of Virginia a handwritten "Petition for Habeas Corpus under 28 U.S.C. sec. 2254" which was rejected by that court for not complying with the format for habeas petitions required by Virginia Code § 8.01-655.  (Resp't Ex. 11).  Because O'Quinn's handwritten petition was not "properly filed," it did not toll any portion of the one-year limitations period.  *See Baptist v. Dotson*, Case No. 2:24-cv-12, 2025 WL 692356, at *2 (E.D. Va. Mar. 4, 2025) (the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts") (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005)).

[7] Moreover, as O'Quinn's motion for summary judgment was filed on January 17, 2026 (Mot. for Summary Judgment 5, Dkt. No. 21), the claim he asserts for the first time therein is untimely by an additional one year and two months.

7

Subsection (D) is potentially relevant to O'Quinn's first claim. As noted above, this claim concerns allegations that the Commonwealth's Attorney's Office withheld information that Don Woods, Jr. and Angela Boyd were confidential informants who had received plea bargains in exchange for their testimony. According to O'Quinn, he did not know about this claim until "an institutional lawyer brought it to his attention." (Habeas Pet. 6, Dkt. No. 1). But this allegation is belied by the statement of facts O'Quinn included in his properly filed state habeas petition in which he admits,

> my lawyer . . . told me [Don Woods, Jr. and Angela Boyd] got a slap on the [w]rist because the both of them were CI's for the Dickenson County Police Department . . . . They lied on me and had [the victim] lie on me. And I went to prison, when the truth was Angela Boyd and Don Jr. Woods [sic], came up with a lie to pay me back for DJ getting charges as well as Angela Boyd got. So in the end I was a victim of payback and revenge . . . . [T]he Commonwealth['s Attorney] dropped Angela Boyds [sic] charges to mis-trespassing if she would get on the stand [to] testify [and] lie to help the [Commonwealth's Attorney].

(Resp't's Ex. 11 at 29-30). Accordingly, O'Quinn admittedly knew about the factual predicate of this claim when he submitted his properly filed state habeas petition on July 29, 2022. Thus, the instant petition is untimely by approximately two years even under § 2244(d)(1)(D).

Liberally construed, O'Quinn's petition could be read as arguing that he is entitled to equitable tolling of the limitations period based on his pro se status. O'Quinn states that "[b]eing pro se, [he] did not know that a federal habeas corpus [petition was] an option until an institutional lawyer brought it to [his] attention." (Habeas Pet. 5, Dkt. 1). But this does not entitle O'Quinn to any equitable tolling. "[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004).

For these reasons, O'Quinn's claims are time-barred.

## B.    Exhaustion and Procedural Default

Respondent also argues that O'Quinn's claims are procedurally defaulted. (Br. in Supp.

of Mot. to Dismiss 7-14, Dkt. No. 16).   A state prisoner must exhaust his remedies in state court before seeking habeas corpus relief in federal court.  28 U.S.C. § 2254(b)(1)(A).  A federal court "may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court."  *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000).   Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court.  *Kasi v. Angelone*, 300 F.3d 487, 501–02 (4th Cir. 2002).   Failure to do so "deprive[s] the state court of an opportunity to address those claims in the first instance." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).   A petitioner must also present his federal claims to the appropriate state court in the manner required by the state court, so as to give the state court "a meaningful opportunity to consider allegations of legal error[.]"  *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986).   A state prisoner does not fairly present a claim for exhaustion purposes when the claim is raised in "a procedural context in which its merits will not be considered."  *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."  *Baker*, 220 F.3d at 288; *see Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (describing the procedural default doctrine as a "distinct but related limit on the scope of federal habeas review").   Simultaneous exhaustion and procedural default occurs "when a habeas petitioner fails to exhaust available state remedies and 'the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'"  *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 722).   In that case, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and

sentence, and thus prevents federal habeas review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Baker*, 220 F.3d at 288.

In his third, fourth, and sixth claims, O'Quinn challenges the sufficiency of the evidence against him for indecent liberties based on the victim's testimony that O'Quinn was asleep at the time of the incident and that it was the victim who lifted the covers and exposed O'Quinn. And in his fifth claim, O'Quinn alleges that he was impermissibly barred from testifying at trial that Gary Don Woods, Jr. had broken into O'Quinn's home six days before he was charged and arrested. O'Quinn raised substantially identical claims for relief in his state habeas petition. (*See* Resp't Ex. 11 at 14-15). The Supreme Court of Virginia held that these claims were barred "because a petition for writ of habeas corpus may not be employed as a substitute for an appeal." (*Id.* at 34 (citing *Brooks v. Peyton*, 210 Va. 318, 321-22 (1969)). And the "application of the rule in *Brooks v. Peyton* is an adequate an[d] independent state law ground for dismissal of [a petitioner's] claims." *Johnson v. Clarke*, Case No. 2:21cv511, 2023 WL 5363605, at *8 (E.D. Va. July 6, 2023), *report and recommendation adopted by* 2023 WL 5352298 (E.D. Va. Aug. 21, 2023). For these reasons, O'Quinn's third, fourth, fifth, and sixth claims are simultaneously exhausted and procedurally defaulted for purposes of federal habeas review.

Consideration of O'Quinn's first, second, and seventh claims requires a different analysis. Regarding his first claim, O'Quinn states that the Commonwealth's Attorney withheld information that Don Woods, Jr. and Angela Boyd were confidential informants who had received plea bargains in exchange for their testimony. Regarding his seventh claim, O'Quinn states that the jury pool was tainted by Tammy Haggins who was "around all the jury members long enough to tell them about [O'Quinn's] past with her niece[,] Amber Smith." (Mot. for Summary Judgment 1-2, Dkt. No. 21). O'Quinn did not present these claims on direct appeal nor in his state habeas petition. (*See* Resp't Ex. 11). As to his second claim, O'Quinn never

argued on direct appeal nor in his state habeas petition that the victim's testimony that O'Quinn was asleep during the incident in question created a "due process error[ ]." *See Anderson v. Harless*, 459 U.S. 4, 6 (1982) (noting that a habeas petitioner must provide "the state courts with a 'fair opportunity' to apply *controlling legal principles* to the facts bearing upon his constitutional claim.") (emphasis added).

Regardless, these claims are properly treated as exhausted as they would be procedurally barred under Virginia law. *See Baker*, 220 F.3d at 288. Virginia Code § 8.01-654(B)(2) provides, in pertinent part, that "[n]o writ [of habeas corpus] shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." The procedural default rule set forth in § 8.01-654(B)(2) is an adequate and independent state law ground for dismissal. *Mackall v. Angelone*, 131 F.3d 442, 446 (4th Cir. 1997) (en banc). Regarding his first claim, and as discussed above, O'Quinn admittedly knew about the factual predicate of the claim when he submitted his properly filed state habeas petition. As to his second claim, it is factually identical to a claim he included in his state habeas petition. And concerning O'Quinn's seventh claim, he admittedly knew about Tammy Haggins' inclusion in the jury pool before his trial started.[8] (*See* Dkt. No. 22 at 7-8 (stating that when he saw Haggins' "name on the jury list," O'Quinn "lost it" even though he knew that "she never was going to be on the jury[.]"). For these reasons, O'Quinn's first, second, and seventh claims are properly treated as exhausted and procedurally defaulted.

"[F]ederal courts may excuse procedural default only if a prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Shinn v.*

---

[8] Moreover, because the claim was first presented in O'Quinn's motion for summary judgment, it is not properly before the court. *Martin v. Ballard*, Civil Action No. 2:14-cv-16158, 2015 WL 5484136, at *18 (S.D. W. Va. Sept. 17, 2015) (holding that because certain "claims were not initially addressed in the petitioner's section 2254 petition, [the] court should not consider them.").

*Ramirez*, 596 U.S. 366, 379 (2022) (internal quotation marks omitted).  This "ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim."  *Linnon v. Clarke*, 232 F.Supp.3d 850, 857 (E.D. Va. 2017) (citing *Coleman*, 501 U.S. at 753-54.  Upon review of his filings, O'Quinn does not allege that any of the above circumstances are present in this case, nor are they apparent from the record.[9]

For these reasons, O'Quinn's claims for relief are procedurally defaulted and/or not properly before this court.  Additionally, O'Quinn has not demonstrated cause and actual prejudice to excuse the procedural default of his claims.

**C.   O'Quinn's Motion**

As noted above, O'Quinn's motion for summary judgment largely restates the claims and arguments he made on appeal but includes his new claim regarding the alleging tainting of the jury pool at trial.  (Dkt. No. 21).  As the court has already addressed and rejected all of O'Quinn's claims as procedurally improper, it will also deny his motion for summary judgment without further analysis.

**D.   Certificate of Appealability**

The court must also consider whether to issue a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing Section 2254 Cases.  O'Quinn has failed to make a substantial showing of the deprivation of a constitutional right, 28 U.S.C. § 2253(c)(2), or that the court's procedural rulings are debatable among reasonable jurists, *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Accordingly, the court declines to issue a certificate of appealability.

---

[9]  Indeed, O'Quinn expressly denies that he received ineffective assistance of counsel.  (Mot. for Summary Judgment 4, Dkt. No. 21) ("I was told to also put down 'ineffective assistance of counsel.'  But I couldn't do that to [my attorney].  He was sick, and he did his best, and my family liked him a lot.").

III.    CONCLUSION

For the reasons stated in this opinion, the court will issue an appropriate order granting

the respondent's motion to dismiss, denying O'Quinn's motion for summary judgment, and

declining to issue a certificate of appealability.

Entered: March 17, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

13